IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| DWIGHT FREEMAN, | : | |
| Plaintiff, | : | Civil Action 2:08-cv-944 |
| v. | : | Judge Smith |
| TERRY COLLINS, *et al.*, | : | Magistrate Judge Abel |
| Defendants. | : | |

ORDER

This matter is before the Court pursuant to Defendants' motion for summary judgment (Doc. 34). For the reasons set forth herein, the motion is granted.

Factual background.

Plaintiff Dwight Freeman, at the time an inmate at the Southern Ohio Correctional Facility ("SOCF"), filed this action on October 7, 2008. In his complaint he named eighteen defendants: Terry Collins, the Director of the Ohio Department of Rehabilitation and Corrections ("ODRC"), Gary Croft, the Chief Inspector at ODRC, William Eleby, chief of classification at ODRC, Phillip Kerns, the warden of SOCF, Linnea Mahlman, the SOCF institutional inspector, Anthony Cadogan, deputy warden of special services at SOCF, Cynthia Davis, unit management administrator at SOCF, Dirk Prise, mental health administrator at SOCF, Dr. Abbas Bawazar, a physician at SOCF, Rhonda Stalnaker, health care

1

administrator at SOCF, Brittany Barr, a nurse at SOCF, Arajaya Treadway, a nurse at SOCF, Larry Green, assistant warden at SOCF, and Nathaniel Miller, Rules Infraction Board chairman at SOCF.[1]

Plaintiff alleged three claims. The first is for deliberate indifference to a serious medical need, in violation of Plaintiff's Eighth Amendment rights, the second is for being punished with isolated confinement as a result of a fabricated conduct report, and the third is for suffering repeated harassment and assaults at the hands of SOCF guards and administration. Plaintiff outlined his factual allegations separately for each claim; these allegations are reproduced below.

Eighth Amendment claim allegations.

On June 27, 2008, Plaintiff broke his left foot while engaging in recreation. He was taken to the SOCF infimary and evaluated by nurses Barr and Treadway. Although Plaintiff was suffering excessive swelling, the nurses did not call the SOCF doctor or send him to outside medical treatment. On June 30, 2008, Plaintiff was called to the infirmary and his foot was x-rayed. On July 1, 2008, the SOCF radiology department notified Dr. McQueeney that Plaintiff's foot was broken. Dr. McQueeney did not call Plaintiff back to the infirmary to receive further care for his foot.

On July 11, 2008, Plaintiff went to the infirmary for chest pain, and at that

---

[1] Plaintiff also named as defendants Ted Strickland, the Governor of Ohio, who was dismissed by order of the Court on May 12, 2009 (Doc. 25), a John Doe, who does not appear to have ever been identified, and Dr. McQueeney, a doctor at SOCF, who was never served (Doc. 7).

time informed two nonparty nurses that he was suffering excessive foot pain. The nurses informed him that Dr. McQueeney had written an order on July 2, 2008 for Plaintiff to see an orthopedist about his foot. The same day, Plaintiff informed Treadway that he was writing a complaint about her failure to treat his foot on the day he broke it; Treadway returned to the medical department and fabricated an entry on Plaintiff's chart stating that his medical record contained no x-ray report showing a break and no referral for an orthopedist. On the same day, Plaintiff submitted his complaint to Stalnaker about Barr and Treadway. Plaintiff then, four to five weeks later, saw Dr. McQueeney again, who refused to send him to an orthopedist for his foot and denied having ever made such a referral.

Plaintiff claims that Defendants Stalnaker, Barr, Treadway, and McQueeney were deliberately indifferent to his serious medical needs in violation of his Eighth Amendment rights, and Defendants Strickland, Collins, Kerns, Malhman, Cadogan tolerated such misconduct by institutions under their control.

Due process claim allegations.

On July 29, 2008, nonparty Corrections Officer Campbell wrote a false conduct report on Plaintiff. The next day, the hearing officer heard the conduct report and referred it to the Rules Infraction Board. On August 12, 2008, Plaintiff appeared before the Rules Infraction Board. He protested that his hearing was untimely under Ohio Administrative Code §5120-9-08, but Defendant Miller proceeded with the hearing. Miller punished Plaintiff with fifteen days' isolation away from the general population. Later, Plaintiff received an additional fifteen

3

days' punishment on a different report.  Plaintiff claims that Defendant Miller violated his constitutional right to due process and subjected him to excessive punishment, and that Defendants Green, Kerns, and Collins ratified this conduct and were liable under the doctrine of *respondeat superior*.  He alleges that he was punished in retaliation for having made complaints, and that his punishment was the result of race discrimination.

Failure to protect claim allegations.

Plaintiff alleges that, since 2006, he has been subjected to abuse, injury, harassment, and beatings at the hand of SOCF guards and administration, and that guards and administrators have been indifferent to these threats to his physical safety.  Since 2006 he has been requesting, in fear of his life, a transfer from SOCF to the Ohio State Penitentiary ("OSP").  Prison administration have consistently denied transfer due to mental health reasons, and he has submitted numerous grievances concerning the transfer process.  Plaintiff alleges that this failure of prison staff to permit transfer has caused him to be subjected to physical and mental abuse at the hands of SOCF guards and administration, and that this constitutes cruel and unusual punishment.  He claims that Defendants Collins, Croft, Eleby, Kerns, Malhman, Davis, Prise, and Bawazer conspired to deprive him of his civil rights.

**Summary judgment standard**.

Summary judgment is appropriate "if the pleadings, the discovery and

disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The movant has the burden of establishing that there are no genuine issues of material fact, which may be accomplished by demonstrating that the nonmoving party lacks evidence to support an essential element of its case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Barnhart v. Pickrel, Schaeffer & Ebeling Co.*, 12 F.3d 1382, 1388-89 (6th Cir. 1993). To avoid summary judgment, the nonmovant "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); *accord Moore v. Philip Morris Cos.*, 8 F.3d 335, 340 (6th Cir. 1993). "[S]ummary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

In evaluating a motion for summary judgment, the evidence must be viewed in the light most favorable to the nonmoving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158-59 (1970); *see Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000) (concluding that the court must draw all reasonable inferences in favor of the nonmoving party and must refrain from making credibility determinations or weighing evidence). In responding to a motion for summary judgment, however, the nonmoving party "may not rest upon its mere allegations [...] but [...] must set forth specific facts showing that there is a genuine issue for

5

trial." Fed. R. Civ. P. 56(e); *see Celotex*, 477 U.S. at 324. Furthermore, the existence of a mere scintilla of evidence in support of the nonmoving party's position will not be sufficient; there must be evidence on which the jury reasonably could find for the nonmoving party. *Anderson*, 477 U.S. at 251; *see Matsushita*, 475 U.S. at 587-88 (finding reliance upon mere allegations, conjecture, or implausible inferences to be insufficient to survive summary judgment).

### Eighth Amendment claim.

Under some circumstances, refusal to attend to the medical needs of prisoners can be violative of constitutional rights. In *Estelle v. Gamble*, 429 U.S. 97 (1976), the United States Supreme Court held that the Eighth Amendment requires the government to "provide medical care for those whom it is punishing by incarceration". *Id.* at 103. It further noted that:

> [D]eliberate indifference to serious medical needs of prisoners constitutes the unnecessary and wanton infliction of pain proscribed by the Eighth Amendment. This is true whether the indifference is manifested by prison doctors in their response to the prisoner's needs or by prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed.

*Id.* at 104.

However, the failure to attend to a serious medical needs only rises to the level of deprivation of civil rights where both an objective and a subjective requirement have been met. *Farmer v. Brennan*, 511 U.S. 825, 833 (1994). A plaintiff must objectively show the existence of a "sufficiently serious" medical need.

6

*Blackmore v. Kalamazoo County*, 390 F.3d 890, 895 (6th Cir. 2004). Furthermore, he must satisfy the subjective requirement by showing that prison officials acted with "deliberate indifference" to the serious medical need. An official does so where "the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of the facts from which the inference could be drawn that a substantial risk of harm exists, and he must also draw the inference." *Harrison v. Ash*, 539 F.3d 510, 517 (6th Cir. 2008), quoting *Farmer*, 511 U.S. at 837. The United States Supreme Court has recognized, however, that deliberate indifference "describes a state of mind more blameworthy than negligence." *Farmer*, 511 U.S. at 835. A failure to correctly diagnose a serious condition – or a failure to investigate a medical condition more closely – may sometimes constitute medical malpractice, but "[m]edical malpractice does not become a constitutional violation merely because the victim is a prisoner."

A medical need is objectively serious if it is "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Blackmore*, 390 F.3d at 897, quoting *Gaudreault v. Municipality of Salem*, 923 F.2d 203, 208 (1st Cir. 1990). A broken foot would fall into this latter category. Defendants have argued, however, that Plaintiff never broke his foot at all. They attached as exhibits to their summary judgment motion over fifty pages of Plaintiff's medical records, which demonstrate, as they say, that "[f]rom the beginning of May 2008 until the time of [the] Complaint, Freeman self-diagnosed that he had cancer and complained

of heartburn, skin disease, eye problems, a fractured knee, a sprained muscle, neck and shoulder pain, chest pain, knots on his genitals and a facial cyst." (Doc. 34 at 8.) *See, e.g.*, Doc. 34-2 at 1 (heartburn), 4 (knots on genitals, cancer, liver problems, AIDS), 6 (fractured knee), 21 (sprained right elbow). In response to a July 28, 2008 grievance setting forth substantially the same allegations as in this case, the institutional inspector disposed of it as a false claim:

> This office investigated your complaint and found you did report to medical services that you injured your left foot. Medical staff responded by arranging for the foot to be x-rayed. The x-rays were obtained in a timely manner with all x-ray results being reviewed by the nursing staff and the physician. The result suggested a small chip fracture but was not definitive. This fracture may be a new injury or may [have] been an old injury that you have had for years. In injuries of this nature the proper treatment is to treat the symptoms, which are minimal in your case. You are completely ambulatory and do not require any aid to walk. This office has witnessed you walking to this office and in the corridors and did not recognize you have any problem. You have been seen by the physician and spent over 30 minutes talking to him about this. You may not be satisfied or agree with the physicians prescribed treatment but this office finds you have been afforded medical care [and] will not initiate additional action at this time.

(Doc. 3-2 at 9.)

The medical records Plaintiff attaches to his own memorandum contra summary judgment support the inspector's disposition. Plaintiff reported to medical on June 27, 2008 complaining that he had turned his ankle; attending Nurse Barr observed swelling. Plaintiff was given crutches and a wrap bandage and was advised to ice the region for 24 hours and to lay in for seven days, and an x-ray of his left foot was ordered. (Doc. 35-1 at 1.) Four days later, on July 1, CMC

8

Radiology reported that Plaintiff's x-ray had revealed a small bone chip. Dr. McSweeney was notified. (*Id.* at 3.) In response to Plaintiff's kite of July 8, Nurse B. Wiget reported the x-ray results to Plaintiff as "possible small bone chipped [sic] to the mid foot. Dr. McSweeney has already been notified on 7/2/08 and made a referral to CMC. He did not mention any type of treatment prior to CMC referral visit." (*Id.* at 5.) On July 30, Plaintiff saw Dr. McSweeney, who advised him to bear weight on the foot only as he could tolerate, and to put in a request for further treatment if the pain persisted for eight weeks or longer without improvement. (*Id.* at 6.) Other records, attached to Defendants' motion, are in agreement. Another report by Nurse Barr, on June 28, 2008, stated that Plaintiff returned to the infirmary in a wheelchair, "laughing and joking... and told me that he was just making sure that he will see the doctor." (Doc. 34-2 at 29.) On August 13, 2008, Plaintiff was visited in his cell by another physician, who reported that Plaintiff was belligerent and confrontational, but was in no apparent distress and had no difficulty in ambulating. (*Id.* at 40.)

There is no medical evidence, aside from Plaintiff's own assertions, that his injury was any greater than the possible bone chip identified by SOCF personnel. Assuming *arguendo*, however, that Plaintiff did suffer an objectively serious injury, there is no evidence that could lead a reasonable finder of fact to conclude that the Defendants knew of and disregarded an excessive risk to Plaintiff's health or safety. The record is uncontroverted that Plaintiff received timely evaluation and treatment, x-rays of his injured foot, and follow-up care. There is no evidence to

support Plaintiff's contentions that Defendants conspired to deprive him of outside examination by an orthopedist and altered medical records to cover up that fact. Even if Plaintiff's injury had been more severe than SOCF medical personnel concluded from his medical records, such failure to diagnose could, at most, have constituted medical negligence not amounting to a violation of Plaintiff's constitutional rights. Defendants are entitled to summary judgment on this claim.

### Due process claim.

The essence of Plaintiff's claim is that as a result of Defendants' wrongful actions he spent a period of time in segregated confinement, which deprived him of certain inmate privileges such as the ability to attend school, engage in recreation, and visit the library. (Doc. 3 at 23-24.) Prison inmates, despite their incarceration, still retain constitutional rights to certain liberty interests of which they cannot be deprived without due process of law. *Olim v. Wakinekona*, 461 U.S. 238, 245 (1983), citing *Wolff v. McDonnell*, 418 U.S. 539, 555-556 (1974).

However, "when analyzing due process claims federal courts look neither to state laws or regulations to ascertain whether they create a liberty interest in connection with an imposition of disciplinary penalties or reclassification, nor to the subjective motives of prison officials for effecting such changes. Instead, the Court focuses on the nature of the deprivation itself." *Miller v. Campbell*, 108 F.Supp.2d 960, 965 (W.D.Tenn. 2000). The United States Supreme Court, in *Sandin v. Conner*, 515 U.S. 472 (1995), concluded that, absent "atypical and significant

hardship", a change in the conditions of confinement does not inflict a cognizable injury that merits constitutional protection. *Id.* at 484. Placement in disciplinary segregation is not an atypical and significant hardship. *Rimmer-Bey v. Brown*, 62 F.3d 789, 791 (6th Cir. 1995). Plaintiff does not allege any way in which his confinement was unlike other administrative segregation or lengthened his sentence. The injury which Plaintiff alleges, therefore, does not as a matter of law amount to a violation of his constitutional rights, and Defendants are entitled to summary judgment on this claim.

### Failure to protect claim.

The factual basis for Plaintiff's claim that SOCF staff and administration violated his constitutional rights by failing to protect him from physical and mental abuse is not clear. Plaintiff attached, to his memorandum contra, a copy of grievances dated April 15 and 25, 2007, in which he complained that institutional staff had repeatedly failed to properly process his requests to be transferred for his own safety to the Ohio State Penitentiary, and a copy of a September 22, 2008 letter from the Deputy Chief Inspector stating that Plaintiff was on the waiting list to be evaluated for eligibility to transfer. (Doc. 35-1 at 15, 17-19.) However, as the docket indicates, Plaintiff was, after the filing of this action, eventually transferred to the Ohio State Penitentiary. (Doc. 28.)

Aside from Defendants' alleged refusal to transfer him, which is now moot, Plaintiff alleges vaguely that numerous prison staff and officials have either beaten

11

him, arranged for him to be beaten by other inmates, or threatened to kill him. *See, e.g.*, Doc. 35 at 7. He has offered very few specific facts about these claims. Plaintiff attached to his memorandum contra a November 8, 2006 decision by the Chief Inspector on an appeal of one of Plaintiff's grievances, which refers to three investigated use of force incidents, on August 24, August 27, and September 1, 2006. (Doc. 35-1 at 14.) He has also alleged that he is now at OSP because "SOCF Guards etc. beat Plt. almost to his death using deadly force on Jan 5 and Jan 6, 2009."[2] (Doc. 35 at 8.) Plaintiff does not state, however, what prison employees attacked him, in either 2006 or 2009, or whether he ever submitted any inmate use of force complaints with respect to the alleged beatings. He has also not presented any medical or other evidence to support his claims of assault.

A prison official's deliberate indifference to a substantial risk of serious harm to an inmate violates the Eighth Amendment. *Street v. Corrections Corp. of America*, 102 F.3d 810, 814 (1996). As in a claim for failure to provide medical care, an inmate, in order to raise a cognizable claim for deliberate indifference to a danger of assault, must show that the alleged mistreatment was objectively serious. *Leary v. Livingston County*, 528 F.3d 438, 442 (6th Cir. 2008). Despite a flurry of vague allegations of threats upon his life and conspiracies to cover up assaults upon him, Plaintiff has not demonstrated, or even alleged, any specific objectively serious

---

[2] As Plaintiff notes in his brief, this allegation, which postdates the filing of this case, forms the substance of other pending litigation, *Freeman v. Collins*, Case No. 2:09-cv-565. Although his complaint in that case contains substantially more detailed allegations about the incident, he has not offered such detail here.

12

mistreatment. To the extent that Plaintiff has alleged that he was unconstitutionally refused transfer out of SOCF, his claim is moot; beyond this, his allegations are too vague to state a claim at all for failure to protect him from substantial harm. Granting Defendants summary judgment on this claim is appropriate.

Conclusions.

For the reasons set forth above, Defendants' motion for summary judgment (Doc. 34) is **GRANTED**. The Clerk of Court is **DIRECTED** to enter judgment for Defendants and to close this case.

**IT IS SO ORDERED.**

/s/ George C. Smith
GEORGE C. SMITH, JUDGE
UNITED STATES DISTRICT COURT